Nov. Term,
1835.

THE BANK of the UNITED STATES and Another *v.* BURKE and Another.

U. S. BANK
v.
BURKE.

4b 141
153   7

If a conveyance of real estate, executed by an intestate in his life-time to defraud his creditors, be set aside after his death by a Court of chancery in a suit by the creditors, and the land be sold under the decree in order to pay the debts,—neither the administrator of the estate nor the Probate Court has any control over the proceeds of the sale.

The creditor whose bill is first filed to set aside such fraudulent conveyance executed previously to any judgment against the intestate, is entitled to a priority of payment over the other creditors.

ERROR to the *Dearborn* Probate Court.

Monday,
December 21.

STEVENS, J.—The facts of this case are not disputed, and are in substance as follows:

One *James Conn* in his life-time was seized in fee of a large and valuable tract of land in the county of *Dearborn;* and was at the same time much involved in debt. Being thus situated, he, on the 23d of *December*, 1820, for the purpose of securing the land from the grasp of his creditors, conveyed it in fee simple clear of all incumbrance, and with covenants of general warranty, to one *Thomas Dugan;* and put *Dugan* into full and peaceable possession of it, and of the rents, issues, and profits of the same. This full and peaceable possession, use, and occupancy of said land, said *Dugan* peaceably held and enjoyed under the conveyance of *Conn* during the life-time of *Conn*, and after his death until interrupted by the creditors of *Conn*.

Some four or five years after the making of said conveyance to said *Dugan*, he the said *Conn* died; and at the time of his death he was still indebted as follows: To the Bank of *Cincinnati*, for the use of one *Capp* who transferred to said *Burke*, about the sum of 2,169 dollars; to. said *Vattier* about the sum of 218 dollars; to the Bank of the *United States* about the sum of 8,528 dollars; and to one *Hutcheson*, about the sum of 1,984 dollars. *Conn* died intestate, and shortly after his death, administration of his estate was granted by the said *Dearborn* Probate Court to *Daniel Bartholomew*. The estate was wholly insolvent. No assets came to the hands of the administrator to be administered; not even a sufficiency to pay the expenses of administration.

*Burke* and *Vattier* severally brought suit at law in the *Dear-*

*born* Circuit Court, and recovered judgments to be satisfied out of assets *quando acciderint.* They then filed a bill in chancery in the said Circuit Court, praying to have said tract of land, so conveyed as aforesaid to said *Dugan* by *Conn*, subjected to the payment of their said judgments. Upon this bill such proceedings were legally had, that the Circuit Court decreed, that the deed of conveyance from *Conn* to *Dugan* was fraudulent and void as to creditors, and that the land should be sold for the payment of the debts of the intestate; and further decreed, that the said *Daniel Bartholomew*, as such administrator as aforesaid, should proceed to inventory, appraise, and sell the same, for the payment of the debts of the intestate.

*Bartholomew*, the administrator, sold the land in pursuance of the decree, realizing in all about 3,200 dollars. He charged himself with the money, as administrator, as assets of the estate in his hands to be administered; and reported his proceedings to the Probate Court. He made no report to the Circuit Court, from which he derived his authority to sell. He did not appear to view his acts as the acts of a commissioner appointed by the decree, but as the acts of an administrator, acting under the general statutory power of an administrator, in cases where the statute authorises administrators to inventory, appraise, and sell the real estate of the intestate.

Neither the Bank of the *United States*, nor *Hutcheson*, had reduced their claims to judgments; but at this stage of the proceedings, they filed in the Probate Court evidence of their demands, and petitioned that Court to have the money raised by the sale aforesaid, distributed among all the creditors under the statute respecting the settlement of insolvent estates. To this *Burke* and *Vattier* objected, and the Probate Court decreed as follows, viz. 1. That the funeral expenses, the expenses of the last sickness of the deceased, and the expenses of administration should first be all paid. 2. That the costs and expenses of the bill in chancery, and the sale and proceedings, should be next paid. 3. That the said judgments, costs, and interest, of the said *Burke* and *Vattier* should be next paid; and the remainder, if any, go to general distribution.

With this decree *Burke* and *Vattier* are content, but the Bank of the *United States* and *Hutcheson* have prosecuted this writ of error.

The first question is, whether the money arising from the

sale of this tract of land became assets in the hands of the administrator, to be by him administered under the statute regulating the settlement of insolvent estates?

This estate is admitted to be insolvent, there being no personal estate out of which the debts of the intestate, or any part of them, could be paid. In such cases, the statute provides that the administrator shall inventory, appraise, and sell the real estate of the deceased, and that the proceeds of such sales shall constitute a fund for the payment of debts. The statute further directs that in such cases the funeral expenses, expenses of last sickness, and expenses of administration, shall all be first paid, and that the remainder of the fund shall be divided equally among the creditors, according to the amount of their several demands, without regard to their dignity. If, then, the money arising from the sale of this land, became assets of the estate of the intestate in the hands of the administrator, to be by him, as such administrator, administered under the provisions of the probate act, the decision of the Probate Court must be erroneous. *Burke* and *Vattier* should have only received their equal share with the other creditors, according to the amount of their several claims.

This position, however, is certainly not tenable. *Conn* conveyed that land to *Dugan* in fee, by a good and sufficient deed of conveyance containing full covenants, &c.; and possession followed the conveyance, &c. This conveyance vested the whole estate and interest of *Conn* in *Dugan*, his heirs, and assigns forever, as against *Conn* and his heirs. Neither *Conn* nor his heirs could ever interrupt *Dugan*, or those holding under him. The administrator stands in the shoes of his intestate. He has no interests or rights but those of the deceased. He cannot render available, or reduce to assets, that which his intestate could not claim, demand, and recover. This land formed no part of *Conn's* estate. It was gone from him and his heirs forever. It did not descend to his heirs, for he had no estate in it to descend; therefore it could not be reduced to assets in the hands of the administrator, and be subjected to distribution, under the probate act as a part of *Conn's* estate.

Suppose this land had sold for more money than was required to pay all the creditors of *Conn*, to whom would the surplus fund go? It certainly could not go to *Conn's* heirs, because

the land was no part of his estate. It would go to *Dugan*, the legal owner. But if the money became assets in the hands of the administrator, to be by him as such administrator administered under the provisions of the probate act, it would be part of the estate of *Conn,* and the surplus would go to his heirs. This conveyance, however, being made without consideration, in fraud of *Conn's* creditors, *Dugan* is considered, in equity, as a trustee for the creditors; or, in other words, his title is incumbered with an equitable mortgage to the amount of the creditors' claims. He is not, however, a trustee for either *Conn* or his heirs. Hence, all remainders after creditors are satisfied belong to him. *Dugan* in this case was not bound to let the land be sold; he might have paid off the creditors, and held the land unincumbered.

From this view of the case it follows, that the moneys arising from the sale of this land, could not become assets in the hands of the administrator, and be subject to a distribution, under the provisions of the act respecting the settlement of insolvents' estates. *Bartholomew,* although he was the administrator of the estate of *Conn,* did not make that sale in that capacity, but in the capacity of a commissioner under the decree of the Circuit Court; and to that Court he should have reported his proceedings, and not to the Probate Court. The Probate Court had no jurisdiction or control of that fund, and therefore could make no decree respecting it. No part of that money was liable to pay the funeral expenses, or the expenses of the last sickness of *Conn;* nor was it liable to pay the expenses of administration upon his estate. 1 Fonb. Eq. 209.— *Grider* v. *Graham,* 4 Bibb, 70.—*Deatly's Heirs* v. *Murphy,* 3 Marsh. 472.—*Bunn* v. *Winthrop,* 1 Johns. C. R. 329.—*Lessee of Hartley* v. *M'Anulty,* 4 Yeates, 95.—*Lessee of Church* v. *Church,* ib. 280.—*Reichart* v. *Castator,* 5 Binn. 109.—Rob. on Fr. Con. 641 to 645.—*Hawes* v. *Leader,* Cro. Jac. 270.

The next question is, can all the creditors of *Conn* come in under the decree of the Circuit Court, prove their claims, and be entitled to an equal distribution of the fund raised, according to the amount of their several claims?

We think that they cannot. The rule in equity appears to be well settled, that where the estate of the debtor has been voluntarily conveyed, before his creditors have obtained judgments against him, for the purpose of defrauding them, as in

this case, and it cannot be seized and sold by an execution on the judgment at law, the creditor who first files his bill in equity to subject such estate to the payment of his judgment, obtains a priority and preference over the other creditors, although his judgment may be the junior: because in such case, neither the judgment at law against the debtor, nor the writ of execution on the judgment, is any lien upon the estate so fraudulently conveyed away; and the only way in which the creditor can create any lien upon it, is by filing a bill in equity charging the fraud, and praying to have the estate subjected to the payment of debts, &c. Such a bill, the instant it is filed, becomes a specific lien; and the creditor who first files his bill, obtains a priority and preference over the other creditors, as the reward of his legal diligence. *Weed* v. *Pierce,* 9 Cow. 722.—*Beck* v. *Burdett*, 1 Paige, 305.—*Edmeston* v. *Lyde,* ib. 637.—*Corning* v. *White*, 2 ib. 567.—*Edgell* v. *Haywood,* 3 Atk. 357.

The proceedings in the Probate Court are *coram non judice,* and must be reversed.

*Per Curiam.*—The judgment is reversed with costs. To be certified, &c.

*G. H. Dunn,* for the plaintiffs.
*Caswell* and *Chester,* for the defendants.