## THE STATE v. YOUNT.

Nov. Term,
1853.

STATE BANK
v.
DAVIS.

The Supreme Court has no jurisdiction under s. 119, p. 377, 2 vol. R. S. 1852, to correct an alleged error in the finding of the Court, in a criminal cause, where the defendant has been acquitted.

APPEAL from the *White* Court of Common Pleas.

*Saturday, December 31.*

---

## THE STATE BANK v. DAVIS.

4b 653
138 481

The surety on a promissory note took a mortgage upon real estate from the principal, by way of indemnity. A judgment having been afterwards obtained upon the note, and an execution having been returned *nulla bona*, the assignee of the judgment afterwards obtained a decree for the sale of certain land, to satisfy the judgment, which the surety had conveyed to a third person to defraud his creditors. The land was sold upon the decree and the judgment satisfied out of the purchase-money. The principal having sold the mortgaged premises to a third party, after the mortgage was recorded, the surety filed his bill of foreclosure to recover the amount of the decree. The grantee was a party in the cause wherein the land fraudulently conveyed by the surety had been ordered to be sold. *Held*, that the bill would lie.

Nov. Term,
1853.

STATE BANK
v.
DAVIS.

Saturday,
December 31.

APPEAL from the *Tippecanoe* Court of Common Pleas.

ROACHE, J.—*James Davis* filed a bill in chancery against *Webb* and *Shoemaker*, the *State Bank*, and numerous other parties.

The *State Bank* alone prosecutes this appeal, and it is unnecessary to take any notice of those parties whose rights are not involved in the appeal.

The record is very voluminous; but we shall state only those facts, collected from the bill, answers, exhibits, and depositions, which bear on the question raised by the parties in this Court.

On the 16th of *January*, 1838, *Davis* signed two notes, as security for *Webb* and *Shoemaker*, to *Spofford*, *Tilletson*, & *Co.*, due in three and four months, amounting to 1,299 dollars and 12 cents, and on the 5th of *April*, 1838, *Webb* and *Shoemaker* executed a mortgage on real estate owned by them jointly, to *Davis*, and five other persons, also sureties for them to a large amount, in order to secure them against their liabilities as such sureties. And on the same day *Webb* made a mortgage of lands owned by him separately, to the same parties, for the same purpose. Both mortgages were duly recorded.

On the 25th of *November*, 1838, *Webb* and *Shoemaker*, being largely involved in debt and in failing circumstances, made an assignment of their property, real and personal, including the mortgaged premises, to *William M. Jenners*, in trust for the payment of their debts, among which was a note to the bank of 9,000 dollars, upon which *Davis* was an indorser, the proceeds of which had been used to pay off judgments and liens on the lands of *Webb* and *Shoemaker*.

*Jenners*, afterwards, as trustee, made a sale, and the bank bid off and bought a portion of the land embraced in the mortgages of the 5th of *April*, 1838.

The only interest the bank has in this suit arises from this purchase.

On the 18th of *February*, 1839, a judgment was rendered against *Webb* and *Shoemaker*, and *Davis*, on the notes of *Spofford*, *Tilletson*, & *Co.*, for 1,361 dollars and 12

cents. An execution was issued and was returned *nulla bona*.

Subsequently, in 1845, *William K. Rochester* became the purchaser and assignee of the judgment of *Spofford, Tilletson, & Co.*, and also of another judgment against *Davis, Webb*, and *Shoemaker*, for 1,316 dollars and 86 cents, in favor of *Horatio J. Harris*.

In *August*, 1848, *Rochester* filed a bill in chancery in the *Tippecanoe* Court of Common Pleas, against *Davis, Humphrey F. Davis*, his son, *Elijah Godfrey*, and others, alleging that in 1834 said *Davis* was the owner, by purchase, of a lot of school land, for which he held the school commissioner's certificate, having paid one-fourth of the purchase-money; that in 1840, *Davis*, still being the holder of the certificate for the school land, for the purpose of defrauding his creditors, transferred it to his brother-in-law, the said *Godfrey*, without any consideration, and having paid the balance of the purchase-money, procured the school commissioner to make the conveyance to *Godfrey;* that *Godfrey* retained the deed without recording it, till 1834, when, at the instance of *Davis*, he conveyed the land to the said *Humphrey F. Davis*. Answer generally denying the fraud.

Upon the final hearing the Court decreed that the conveyances were void as against creditors, and ordered the land to be sold to satisfy the claims of which *Rochester* was the assignee. The land was accordingly sold, was bid off by *Rochester*, and conveyed to him.

The object of the bill in the present case, is to foreclose the mortgage of *Davis* against *Webb* and *Shoemaker*, and to subject that portion of the land bought by the bank at the trustee's sale, to the payment of the *Spofford* and *Tilletson* claim, which was embraced in the mortgage. *Davis* insists he is entitled to this relief, on the ground that the debt of *Spofford, Tilletson, & Co.*, against the payment of which the mortgage of *Webb* and *Shoemaker* was designed to secure him, had been paid by him, by reason of the decree in the case of *Rochester*, assignee,

&c., against him, subjecting the lot of school land to sale for that purpose.

The Court below decreed in accordance, with the prayer of the bill, a foreclosure of the mortgage, and ordered a sale of the mortgaged premises.

It is contended, on behalf of the appellant, that *Davis* is not entitled to claim the indemnity secured to him by the mortgage from *Webb* and *Shoemaker*, for the payment of the debt to *Spofford, Tilletson, & Co.*, because, as counsel insist, his fraudulent conveyance divested him of all title in the school land, and estops him from claiming that the payment of the debt by a sale of the land was a payment by him.

A number of authorities are cited in support of this position; but are not, as we conceive, applicable to the case. They go to establish the familiar principle that a fraudulent deed is valid as against the grantor and his heirs, and is void only as against a creditor, and that a Court of Equity will not lend its aid to relieve the grantor, in such case, from the legal consequences of his fraud. *Davis*, in this case, is not seeking to set aside his own fraudulent act. That was set aside and annulled, against his will, by a decree of the Court. He claims that the payment of the debt, against which he was indemnified by the mortgage, by a sale of the land so ordered by the Court to be sold, was such a payment by him as to entitle him to enforce his indemnity.

No question arises here between the fraudulent grantor and his grantee. A controversy between them might present the case in a very different aspect. The case of *The Bank of the United States* v. *Burke*, 4 Blackf. 141, is cited with confidence. The point decided there was, that where a conveyance was set aside at the suit of a creditor, on the ground of fraud, the surplus remaining after the payment of the debt, belonged not to the fraudulent grantor, but to his grantee. This does not meet the question. It is not whether a fraudulent conveyance is valid as between the parties to it, nor whether, in case of

its being annulled at the suit of a creditor, the grantor is entitled to a surplus remaining after the payment of the debt; but whether, when the debt has been paid by a sale of the property, the grantor is entitled to a credit for the payment.

Justice *Story*, in speaking of the effect of conveyances void for fraud as against creditors, says, " a conveyance of this sort, (it has been said with great force) is void only as against creditors, and then only to the extent in which it may be necessary to deal with the conveyed estate for their satisfaction. To this extent, and this only, it is treated as if it had not been made. To every other purpose it is good. Satisfy the creditors, and the conveyance stands." 1 Eq. Jurisp., sec. 371.

The principle on which Courts of Equity proceed in such cases is, that the title of the debtor, to the extent of the debt, and for the purpose of paying it, is not divested by his conveyance. As against the creditor he does not, and cannot, convey his title.

What was the effect then of the decree of the Court on the bill filed by *Rochester* against *Davis?* The land was decreed to be sold to satisfy the debt, because, for that purpose, it was *Davis's* land. If the debt was satisfied by the sale of *Davis's* land, it follows that he is entitled to the benefit of the payment. And if he has paid the debt, he is entitled to the benefit of his mortgage security.

It cannot be said *Davis* is seeking to avail himself of his own fraud. There is no pretence of any fraud, in the transaction between him and *Webb* and *Shoemaker*. That was fair and *bona fide*. The sale of his land, and the application of its proceeds to the payment of the debt, was the act of the Court. They directed his debt to be paid by property, which, by the decree, was ascertained to be his for that purpose.

This view does not conflict either with the authorities or with principle. It gives to the statute of frauds its full operation in regard to the rights of the fraudulent grantor and grantee, leaving the conveyance in full force as between them, subject to be rescinded only at the suit.

of a creditor, to the extent of his debt and no further; and only gives to such rescission the legitimate consequences belonging to it, in accordance with equally familiar principles.

As before observed, the rights existing between the fraudulent grantor and grantee are not involved. The appellant here does not stand in a relation to raise that question. She stands in no better position than would *Webb* and *Shoemaker*. She claims her title to the land by a purchase under the latter, made subsequent to the recording of the mortgages sought to be foreclosed, and was, therefore, a purchaser with full notice of *Davis's* rights. She was, besides, a party to the suit in which the fraudulent conveyances were decreed to be void. She is, therefore, chargeable with full notice of all the facts. She can assert no right or claim which might not have been asserted by *Webb* and *Shoemaker*, in case they had not made the deed to *Jenners*, as trustee, under which the bank purchased.

*Per Curiam.*—The judgment is affirmed, with 1 per cent. damages and costs.

*A. S. White*, *W. M. Jenners*, and *H. W. Chase*, for the appellant.

*Z. M. Baird* and *J. M. Reynolds*, for the appellee.