## The Continental Life Insurance Company of New York v. Harriet E. Willets.

*Agency: Insurance: Credit: Payment.* A sub-agent, employed by the agent of an insurance company to solicit applications for insurance, collect premiums, and deliver policies, has no general authority, by virtue of such employment, to give credit or receive anything but cash in payment.

*Life insurance: Agency: Authority.* Where an application for insurance provides that any neglect to pay the premium when due shall render the policy void and forfeit all payments made thereon, and that the policy shall not be binding upon the company until all premiums due thereon shall be received by the company, or some one authorized to receive the same, and during the lifetime of the insured, the insurance company is not liable on a policy which has not been delivered, upon evidence that a sub-agent of its agent, has, without its authority, taken from the insured a promissory note of a third person in part payment of the first premium, in the absence of any showing that such sub-agent was allowed to substitute his own personal liability to the company in place of the premium.

*Part-payment: Credit: Presumption.* The payment of a part of the premium upon a policy based upon such an application, does not, by itself, raise a presumption of an understanding that time was to be given for the payment of the balance.

*Evidence.* Where a witness for plaintiff has testified to certain admissions as having been made by defendant's agent in the course of a conversation, it is competent for defendant to prove, by another witness, who was present immediately after such admissions were alleged to have been made, and while the conversation continued upon the same subject, subsequent statements by such agent, which, though not directly contradicting the alleged admissions, would have a tendency, if believed, to convince the jury that such admissions were not in fact made as testified to by the prior witness.

*Heard January 9. Decided January 11.*

Error to Wayne Circuit.

Harriet E. Willets brought this action in the court below, against the Continental Life Insurance Company of New York, upon a policy of insurance issued by said company upon the life of her husband, William J. Willets. The opinion contains a sufficient statement of facts as to all the questions decided, except that of the admission of the evidence of Gray. One Dewitt C. Johnson testified on behalf of the plaintiff, that on the morning after the death of Mr. Willets, he was in the office of Messrs. Tenwinkle & McCune, the defendant's agents, and there met Mr. Ten-

winkle, and inquired of him whether Willets had taken his policy, to which Tenwinkle replied that they had taken a note for a part of the premium. On cross-examination he testified that Charles B. Gray (the soliciting agent who had taken said note), came in soon after this conversation, but that Tenwinkle did not, in his presence, ask Gray if he had given up that note. The defendant's counsel called said Gray as a witness, and asked him whether Tenwinkle did not, on that occasion, in the presence of Johnson, ask him if he had given up the note to Willets previous to his death. Objection being made to this question, the defendant's counsel stated that they proposed to prove that Tenwinkle then and there asked Gray, in Johnson's presence, whether he had given up the note to Willets, and that Gray made the reply that he had not, with the explanations why he did not. The objection was sustained, and the defendant excepted. The verdict was for the plaintiff, and judgment was rendered accordingly. The defendant brings the case up on writ of error.

*C. I. Walker*, for plaintiff in error.

*Wilkinson & Post*, and *Ashley Pond*, for defendant in error.

COOLEY, J.

The defendant in error, who was plaintiff below, brought action upon a policy of insurance, by which the life of her husband, William J. Willets, was insured in her favor. The issue of the policy by the company and its transmission to their general agents in Detroit, in whose hands it was at the time of the death of Willets, were not in dispute. The application for the policy contained the following clause immediately preceding the signature of the applicant:

"It is hereby declared that the above are fair and true answers to the foregoing questions, and it is acknowledged and agreed by the undersigned that the above statement shall form the basis of contract for insurance, and also that any untrue or fraudulent answers, any suppression of facts in regard to the health (or in regard to any pecuniary interest which the insurer may have in the life) of the party insured; any neglect to pay the premium on or before the day it became due, will render the policy null and void, and forfeit all payments made thereon; also that the policy of insurance hereby applied for shall not be binding upon the company until the amount of all premium and premiums, as stated therein, which shall be due or overdue, shall be received by said company, or by some person authorized to receive the same, and during the life time of the party herein insured."

It was claimed by defendant on the trial that the first premium upon the policy had never been paid by the insured, and that consequently the plaintiff had never become entitled to the policy or to maintain action upon it. The plaintiff claimed, on the other hand, that all of the first premium except twelve dollars had been paid in a promissory note against one Wilkie, delivered to and accepted by one Gray, who is claimed to have had authority to receive the same as payment, and with whom it is also claimed there was an understanding, express or implied, for some credit for the remaining twelve dollars.

Gray, it appears, was a sub-agent employed by Tenwinkle and McCune, the general agents of the defendant at Detroit, as solicitor, and to deliver policies and collect premiums. There was no dispute that when the policy in question was sent on by the company to their general agents, it was delivered to Gray to collect the premium thereon and then to deliver the same to the insured; that he then called

upon Willets, and on the latter expressing his inability to pay, he took from him the Wilkie note. The understand-ing on which he took the same was in dispute; it being claimed on one side that it was to constitute payment to the amount due upon it if Gray found it satisfactory, and that he did find it satisfactory, and retained the same; while on the other side it was insisted that Gray took it for the purposes of inquiry merely; that the result of the inquiries was not satisfactory, and that he had endeavored to return the note to Willets previous to his death. The defendant also denied the authority of Gray to bind them by any agreement either to take a note or to give credit.

The case was put to the jury by the circuit judge upon the theory that under the undisputed facts of the case, Gray had authority to make the arrangement claimed by the plaintiff to have been made, and that the question for the jury, therefore, was whether he did make it or not. The charge was:

"If the note for forty-two dollars, given in evidence, was delivered to, and accepted by Gray, as payment in part of that portion of the premium payable down, and there was an understanding, express or implied, between Gray and William J. Willets that the residue of said portion of the premium should be paid to said Gray at some future time, then Gray at once became indebted to his principals, Ten-winkle & McCune, for such premium, and they to the defendant, and as between plaintiff and defendant said premium was paid and the policy delivered to her."

If Gray could bind the company by such an arrange-ment, it must be either because expressly authorized, or because the course of business of the defendant was such as to warrant an implication of authority upon which third persons would be authorized to act. A sub-agent, employed by the agent of an insurance company to solicit applica-

tions for insurance, collect premiums and deliver policies, has certainly by virtue of such employment no general authority to give credit or receive any thing but cash in payment. This is too plain to require the citation of authorities.

That any express authority was given in this case is not claimed; but the plaintiff insists that the course of business in the office of the general agents of defendant was this: When a policy, which had been applied for was received, it was delivered to the sub-agent who had solicited the same for the collection of the premium, who was at the same time charged with the amount of the premium; that he was allowed to make such arrangement as he pleased with the party to be insured, the company looking to him for the premium; and that in all his dealings with such party, he acted as principal, the company not being concerned in his arrangements, but looking to him for the money or the return of the policy, and it being indifferent to them whether any payment had, in fact, been made to the agent or not.

The evidence relied upon to make out this course of business, was that of the agent Tenwinkle, and of the sub-agent, Gray. Gray testified that he was employed by Tenwinkle & McCune, the general agents, and not by the company; that his duties were soliciting, taking applications, returning them to the office of the general agents, receiving from them policies upon which he was to collect premiums, and then delivering them; that he had no authority to receive any thing in payment for premiums except money, and if he accepted any thing else, it was on his own responsibility and he paid the money himself; that he was paid by the month for his services; that when a policy was received, a note was made that it had been delivered to him and he was liable to the company; that previous to this

transaction, he had never taken a note of any one on a premium, and if he gave credit, he paid over the money himself and took the chances of collecting it.

Tenwinkle testified that they had no authority from the company to take notes on premiums, but had done so sometimes, discounting them themselves, and accounting to the company for the money; that when policies were received by them, they were held responsible to the company for either the money or the return of the policies; that when they delivered a policy to the soliciting agent and he did not return it, he accounted to them for the premium in money, or something they would accept as money, and if he paid money they were satisfied, and did not inquire what he took of the insured.

To support the theory of the plaintiff, there should have been some evidence showing, or tending to show, that the sub-agent was allowed at his option, to substitute a personal liability of his own to the company in the place of the money which he was to collect as premiums; the company being content to look to him as its debtor for any amount which he saw fit to arrange otherwise than by actual payment in cash, with the parties applying for insurance. For the purposes of disposing of the case on this record, it is sufficient to say there is no such evidence. The company appear to have taken care to provide against any implication of any such understanding; requiring, as they appear to have done, an express stipulation by the applicant for insurance, that the policy should not have force until the premium was actually received. And we are not apprised by any evidence in this record, that Tenwinkle & McCune, who were the employers of Gray, were content or inclined to rely upon his responsibility at all. They certainly relied upon his integrity, to account faithfully for all moneys collected for them; but this they

might well do without being disposed to trust either to his judgment or his responsibility, under an unlimited arrangement that he might deal as a principal, in respect to to the premium moneys. It is very true that if he saw fit to pay over to his principals the premium upon a policy they did not inquire whether he had actually received it or not; nor had they any occasion to. If a collecting agent for any reason of his own, pays to his principals the amount of a demand which he has not collected, it would be a violent inference from that fact that he was authorized to discharge other demands without payment. The implication, on the other hand, would be that the principal insisted upon strict payment always, and did not consent in any case to leave matters open to await the result of private arrangements between the debtor and the agent, with which the principal was not concerned, and which he did not care to inquire into.

There is still less ground for assuming that there is any evidence in the case from which an implication can arise, of a valid agreement to give Willets credit for the balance of the premium. There is no evidence whatever that Gray had authority to give credit, and if he had, the payment of a part of the premium could not, by itself, raise a presumption of an understanding that time should be given for the payment of the balance. The company, on the other hand, would have had a right to insist that the remainder should be paid immediately.

For this error, we think the judgment should be reversed. On the admission of evidence, we are inclined to think no error was committed except in the refusal to admit the evidence of Gray, as to his conversation with Tenwinkle in the presence of Johnson. That, we think, would have been admissible; and had evidence been given by him in accordance with the proposition of counsel, while it would not

have contradicted Johnson directly, it would have gone very far in convincing a jury, if they believed it, that the conversation testified to by Johnson did not take place.

The other Justices concurred.