MASSACHUSETTS BONDING & INSURANCE COMPANY v. HENRY
KNOX, LOTTIE KNOX, CABARRUS COUNTY BUILDING, LOAN &
SAVINGS ASSOCIATION, T. J. HENDRIX AND G. H. HENDRIX,
ADMINISTRATOR C. T. A. OF THE ESTATE OF JOHN M. HENDRIX, OLA
HENDRIX AND HUSBAND, G. H. HENDRIX, J. W. HINSON AND WIFE,
NETTIE HINSON, G. H. HENDRIX, TRUSTEE, B. W. BLACKWELDER,
TRUSTEE, C. M. IRVIN, JR., AND WIFE, PEARL M. IRVIN, AND ROBERT
H. IRVIN, TRUSTEE.

(Filed 23 January, 1942.)

1. Lis Pendens § 1—

The sole object of *lis pendens* is to keep the subject of action *in custodia legis* and to give notice to subsequent purchasers.

2. Same—

*Lis pendens* and registration each have the purpose of giving constructive notice by record, and the statutes, C. S., 501, 3309, must be construed *in pari materia*, and while the *lis pendens* statutes do not affect the registration laws, the converse is not true.

3. Registration § 2—

A duly recorded instrument gives notice of all matters which would be discovered by reasonable inquiry.

4. Same—

A recorded mortgage or deed of trust gives notice not only of the existence of the lien but also the remedies accruing to the holder in the event of default, and when the instrument is upon its face in default a prudent examiner is put upon inquiry as to whether the debt has been kept in date by payment and whether the lienholder is pursuing either of the remedies of foreclosure under the power of sale or foreclosure by suit.

5. Same: Lis Pendens § 1—Lis pendens statutes are not applicable to suits to foreclose duly registered mortgages or deeds of trust.

This action was instituted to foreclose a duly registered deed of trust in which the trustee and the *cestuis* and the owner of the equity of redemption by *mesne* conveyances, were made parties. While the action was pending the owner of the equity sold the property. *Held:* The duly registered deed of trust was constructive notice, not only of the lien, but also of the pendency of the foreclosure suit, since it would have been discovered by a prudent examiner, and therefore notice of the suit under C. S., 501, by indexing and cross-indexing same in the *lis pendens* docket was not required.

6. Same: Limitation of Actions § 11c—When foreclosure is instituted within time, subsequent purchasers with notice cannot assert bar of statute.

Suit to foreclose a duly registered deed of trust was instituted prior to the bar of the statute, C. S., 437, against the trustee, the *cestuis* and the assigns of the *cestuis*. While the suit was pending, the assigns of the *cestuis* sold the property, and upon discovering the transfer, plaintiff had

the purchasers made parties. At the time they were made parties the ten-year period prescribed by statute had expired. *Held:* The purchasers during the pendency of the foreclosure suit were chargeable with notice thereof and acquired only that interest which their grantors then had, and therefore they cannot assert the bar of the statute.

CLARKSON, J., dissents.

STACY, C. J., concurring.

DEVIN, J., dissenting.

SEAWELL, J., dissenting.

. APPEAL by defendants from *Ervin, Special Judge,* at December Term, 1940, of CABARRUS. Affirmed.

Civil action to foreclose a trust deed on real property.

On 10 May, 1927, defendants Henry Knox and wife, Lottie Knox, executed a deed of trust on certain land located in Cabarrus County to secure a note payable on or before 10 May, 1928. Thereafter, the note secured by the deed of trust was duly acquired by the plaintiff. The last payment on the note was made on 10 January, 1930.

On 20 November, 1930, Knox and wife executed a second deed of trust on the same land to J. E. Hendrix, Trustee, which deed of trust was foreclosed in 1933. The defendant Ola G. Hendrix purchased at the foreclosure sale and it was conveyed to her by the trustee. On 24 April, 1936, she and her husband, G. H. Hendrix, conveyed the property to G. W. Hinson and wife, Nettie Hinson.

The note held by plaintiff being in default, it made demand upon the trustee in the deed of trust securing the same to foreclose. The trustee having expressed an unwillingness to act, plaintiff instituted this action on 10 November, 1937, making all parties of record, including the trustee, parties defendant. No separate notice of *lis pendens* was filed.

On 9 April, 1939, while said action was pending, the defendants J. W. Hinson and wife conveyed the land to C. M. Irvin, Jr., and wife, Pearl M. Irvin, and on the same date the said Irvins executed a deed of trust to Robert H. Irvin, Trustee. At the time the defendants Irvin purchased said land they had no actual knowledge of the pendency of the suit or of the deed of trust sued upon. The plaintiff, having discovered these subsequent conveyances, on 13 September, 1940, obtained an order making C. M. Irvin, Jr., and wife, Pearl M. Irvin, and Robert H. Irvin, Trustee, parties defendant to this action. They answered pleading the 10-year statute of limitations. The defendants Knox having failed to answer; judgment by default final as to them was entered at the August Term, 1940, Superior Court of Cabarrus.

The matter came on to be heard before Irvin, Special Judge, at the December Term, 1940, Cabarrus Superior Court, and was there heard by consent of parties without the intervention of a jury. The judge

having found the facts substantially as herein stated, entered judgment in favor of the plaintiff, modifying the amount demanded in accord with admissions. The decree entered appointed a commissioner to make sale and decreed foreclosure. The defendants, other than Knox and wife, excepted and appealed.

*J. F. Flowers for plaintiff, appellee.*
*Hartsell & Hartsell and Robert H. Irvin for defendants, appellants.*

BARNHILL, J. When an action is instituted to foreclose a duly registered deed of trust, must notice of the proceedings be cross-indexed as required by C. S., 501, so as to protect the mortgage creditor against subsequent purchasers from the mortgagor or his assigns who are parties to the action? We answer in the negative.

The law of *lis pendens* stems back to the Roman law where the rule was "a thing concerning which there is a controversy is prohibited during suit, from being alienated." The same rule was formulated and adopted by Lord Bacon, thereafter becoming firmly fixed in the English law, inherited by us as a part of the common law. It is founded on the maxim *pendente lite nihil innovetur* and under the common law the bill of complaint, or the cross complaint, as the case may be, is the *lis pendens*. Now, however, with us, to be effectual it must be indexed and cross-indexed as required by C. S., 501.

The sole object of *lis pendens* is to keep the subject in controversy within the power of the court until final decree and to make it possible for courts to execute their judgments. It gives notice of a claim of which otherwise a prospective purchaser would be ignorant. All property which is the subject matter of suit under the doctrine of *lis pendens* is *res litigiosa* and is *in custodia legis*.

Prior to the adoption of our registration law it applied in all cases in which title to or an interest in property was asserted and the suit itself constituted the requisite notice. Now, to be effectual, the action must be indexed and cross-indexed as required by C. S., 501. When so indexed, pending the suit, it operates in the nature of a recorded lien of which all must take notice.

The Connor Act, C. S., 3309, amended or modified the common law *lis pendens* rule as it applies in this State. It provides a new and different method or means of giving constructive notice of deeds, mortgages and other instruments affecting title to land. Under it registration notice is a substitute for the common law *lis pendens* notice. The wisdom of this act has been demonstrated. At the time of its enactment ascertainment of claim to land was difficult and titles were in a state near to chaos. It brought about certainty and security in that it pro-

vided one place and one place only where purchasers may look to find the status of titles to land. *Davis v. Robinson*, 189 N. C., 589. It is upon this record, under this act, that examiners and purchasers have come to rely.

"It is often said by the courts that *lis pendens* does not affect the recording or registry laws. This is true. *Lis pendens* does not affect the recording laws in the same sense that it does not affect other positive legislative enactments . . . But while *lis pendens* may not modify the recording or registry laws, the converse of the proposition is not true. The application of the recording laws in cases where the rule *lis pendens* is applied modify the results of the application of that rule . . . The recording or failure to record instruments under which parties have sought to acquire interests in the subject matter of litigation, either *ante litem* or *post litem,* becomes quite material when we come to consider how those rights or supposed rights are affected by *lis pendens.*" Bennett, Lis Pendens, pp. 338-40; *McCutchens v. Miller,* 31 Miss., 83.

The effect of *lis pendens* and the effect of registration are in their nature the same thing. They are only different examples of instances of the operation of the rule of constructive notice. One is simply a record in one place and the other is a record in another place. Each serves its purpose in proper instances. They are each record notices.

Hence, the law of *lis pendens* and the statute requiring the registration of instruments affecting title to real property must be construed *in pari materia.* Otherwise, the one would be destructive of the other.

When so construed the rule *lis pendens* applies in actions to set aside deeds or other instruments for fraud, to establish a constructive or resulting trust, to require specific performance, to correct a deed for mutual mistake and in like cases where there is no record notice and where otherwise a prospective purchaser would be ignorant of the claim. That is, *lis pendens* notice is required when the claim is *contra* or in derogation of the record.

Under our registration law, C. S., 3309, the object of registration is to give notice and when an instrument is registered it is sufficient to put a careful and prudent examiner upon inquiry. The record is notice of all matters which would be discovered by reasonable inquiry. *Dorman v. Goodman,* 213 N. C., 406, 196 S. E., 352. The date of registration controls the title as against purchasers, *Sills v. Ford,* 171 N. C., 733, 88 S. E., 636. The holder of the registered instrument is protected against all subsequent conveyances and no other notice is required.

A registered mortgage or deed of trust gives notice to a prudent examiner not only of the existence of the lien thus created but of the remedies accruing to the holder in the event of default, which are primarily (1) sale under the power contained in the instrument, if any; and (2)

,sale by foreclosure proceedings. When an examiner finds a mortgage of record foreclosure of which is apparently barred the questions immediately arise: (1) has the mortgage debt been kept in date by payments; (2) has the power of sale, if any, been exercised; and (3) has the mortgagee exercised or is he exercising his right to foreclose, thus suspending the statute of limitations?

If a deed is registered a subsequent purchaser has notice. *Threlkeld v. Land Co.,* 198 N. C., 186, 151 S. E., 99. "It is only a duly registered mortgage that will affect the subsequent purchaser with notice." *Todd v. Outlaw,* 79 N. C., 234.

"The law has appointed a place where mortgages must be registered in order for notice to purchasers and if there be no registry the purchaser is not held to constructive notice by any other means. The registration in such a case, it is said, is the only thing that can operate as constructive notice." Bennett, Lis Pendens, p. 340; *McCutchens v. Miller, supra.*

"The record of an unsatisfied mortgage is sufficient to put a third person upon inquiry, and whatever puts a person upon inquiry is in equity notice to him of all the facts which such inquiry would have disclosed. *Bowles v. Chauncey,* 8 Conn., 389. One who purchases premises covered by an undischarged mortgage cannot claim to be a purchaser without notice of the equities of the mortgagee . . . and inquiry of the mortgagee would have elicited the information that the mortgage was still in force as between the original parties." *Collins v. Davis,* 132 N. C., 106; *Boxheimer v. Gunn,* 24 Mich., 272; Jones on Mortgages, 927.

Speaking to the subject in *Jones v. Williams,* 155 N. C., 179, 71 S. E., 222, this Court, quoting from *Bishop of Winchester v. Paine,* 11 Vesey, 194-201, said "he who purchases during the pendency of the suit, is bound by the decree that may be made against the person from whom he derives the title; the litigating parties are exempted from the necessity of taking any notice of a title so acquired; as to them it is as if no such title existed, otherwise suits would be interminable, or, which would be the same in effect, it would be the pleasure of one party at what period the suit should be determined."

Here, at the time the Irvins purchased the deed of trust was on record. Upon its face it was in default. They were put on notice that the rights existing in the holder of the lien to foreclose for satisfaction of the debt had accrued. This notice would demand that a prudent examiner investigate further to ascertain whether the debt had been kept in date by payment and whether the lienholder was pursuing either of the remedies available, and it was the duty of the Irvins to be vigilant, take care of their interests and make such further investigation as the circumstances

demanded. This clearly required that they ascertain whether foreclosure proceedings were pending. This information was readily available either from the civil issue docket or from the trustee in the deed of trust.

Correctly interpreted, the pending action is not one affecting the title to real property as contemplated by C. S., 500. The plaintiff is merely seeking to enforce a right acquired at the time the mortgage was executed and recorded. All subsequent parties dealing with the subject matter were put on notice from registration and not from the institution of the action. The Irvins are not necessary parties to the action. When admitted as parties they could only prosecute or defend in the shoes of their grantors. The Court will not permit any new question to arise in the cause as a consequence of such a purchase. Bennett, Lis Pendens, 217.

A foreclosure sale under mortgage, whether held under the power or under an order of court, is either valid or invalid. If valid, the purchaser gets a good title which relates back to the date of the registration. As the proceeding is regular and no attack is made thereon any sale ordered by the court would be valid.

To hold otherwise to a material extent nullifies the registration law. It is but to say that registration is notice until and unless a foreclosure action is instituted. Upon such happening it then ceased to be notice and a purchaser acquires a good title as against the mortgage unless the foreclosure proceeding is properly indexed as required by C. S., 501.

To state it differently, an unregistered mortgage is good as between the parties. If the mortgage of plaintiff was unrecorded but this proceeding was duly indexed and cross-indexed on the *lis pendens* docket, such record would not constitute constructive notice of the mortgage and plaintiff's rights. Bennett, Lis Pendens, 340. Any other conclusion would over-rule a long line of our decisions in which it has been held consistently that registration is the one and only means of giving notice of an instrument affecting title to real estate. *Turner v. Glenn, ante,* 620, and cases cited.

The pertinent statute of limitations is against *an action to foreclose* a mortgage or deed of trust. The action, once instituted within the 10-year period against all parties having any record interest in the land, suspends the running of the statute of limitations. Neither the parties to the action nor anyone claiming under them can thereafter successfully plead such statute in bar of plaintiff's right to foreclose. It is accepted law that a payment, however small, will suspend the statute as to all subsequent purchasers. *A fortiori,* a solemn suit duly instituted against all record owners will have like effect.

The suit having been instituted before the bar of the statute the mortgage is still alive. Hence, it gives binding constructive notice which is completely effective against all purchasers of the land from the time of the recording.

It seems to be an accepted rule that a purchaser cannot acquire a greater interest than the grantor possesses. Here the grantor owned only the equity of redemption. The Irvins claim under the deed and through no other source. To establish any right they must first establish the privity of contract. At the time they received deed for the premises the foreclosure proceedings was pending. The equity of redemption was in the process of foreclosure. The statute of limitations was thereby suspended. As they claim no greater interest than that owned by the grantor they are bound by the foreclosure proceedings and cannot plead the statute of limitations, which is nonexistent in respect to this particular action, by virtue of the fact that the suit was instituted in due time.

Otherwise, a purchaser of a tax sales certificate instituting foreclosure action, to obtain protection against subsequent purchasers, must first have the action cross-indexed. This would be equally true as to a claimant undertaking to enforce a materialman's or laborer's lien. Such is not the purpose of the law. We have so held in respect to attachment proceedings. *Pierce v. Mallard,* 197 N. C., 679, 150 S. E., 342.

The judgment below is

Affirmed.

CLARKSON, J., dissents.

STACY, C. J., concurring: The period prescribed for the commencement of an action to foreclose a mortgage or deed of trust, where the mortgagor or grantor has been in possession of the property, is "within ten years after the forfeiture of the mortgage, or after the power of sale becomes absolute, or within ten years after the last payment on the same." C. S., 437. Hence, upon the institution of an action to foreclose within the statutory period, the statute of limitations ceases to run either in favor of the defendants or against the plaintiff. *Harris v. Davenport,* 132 N. C., 697, 44 S. E., 406. "It may therefore be taken as well settled that a judgment in an action *in rem* or one to foreclose a mortgage binds not only the parties actually litigating and their privies, but also all others claiming or deriving title under them by a transfer *pendente lite.* The filing a formal *lis pendens* is not required for the application of this recognized principle when the suit is brought in the county where the land is situated." *Jones v. Williams,* 155 N. C., 179, 71 S. E., 222. The cross-indexing statute, C. S., 501, applies only where the entry of *lis pendens* is required. "Any party to an action desiring to claim the benefit of a notice of *lis pendens* . . . shall cause such notice to be cross-indexed," etc.

The above statement from *Jones v. Williams, supra,* is determinative of the instant case. A careful examiner, when he finds upon the registry an uncanceled mortgage or deed of trust, which still lacks the quality of presumptive compliance or payment arising from the expiration of fifteen years, C. S., 2594, is put on notice of whatever a reasonable inquiry would disclose. *Wynn v. Grant,* 166 N. C., 39, 81 S. E., 949; *Collins v. Davis,* 132 N. C., 106, 43 S. E., 579. "A party having notice must exercise ordinary care to ascertain the facts, and if he fail to investigate when put upon inquiry, he is chargeable with all the knowledge he would have acquired, had he made the necessary effort to learn the truth of the matters affecting his interests." *Hargett v. Lee,* 206 N. C., 536, 174 S. E., 498. The vital matter of notice here is what flows from the registered and uncanceled deed of trust, the lien of which the plaintiff is seeking to enforce. If the *lis pendens* statute, C. S., 500, has no application to an action of foreclosure when brought in the county where the land lies, and we have so held in a number of cases, it follows as a necessary corollary that the cross-indexing statute is equally inapplicable.

In the Code of Civil Procedure (1868), sec. 90, this section contained the provision, "and if the action be for the foreclosure of a mortgage, such notice must be filed twenty days before judgment, and must contain the date of the mortgage, the parties thereto, and the time and place of recording the same." The same provision appears in the Code of 1883, sec. 229, and the Revisal of 1905, sec. 460. But the provision was not brought forward in the Consolidated Statutes of 1919, having been repealed by ch. 106, Public Laws 1917, and the General Assembly evidently concluding that it was no longer appropriate in view of C. S., 3311, requiring the registration of deeds of trust and mortgages "in the county where the land lies," and declaring the effect of such registration. *Threlkeld v. Land Co.,* 198 N. C., 186, 151 S. E., 99. It was in the statute, however, when *Jones v. Williams, supra,* was decided. See 34 Am. Jur., 382.

There is no debate as to the meaning of the language used in C. S., 501. We all agree it is so plain "that he may run that readeth it." The divergence of opinion arises over its applicability. The lien of a deed of trust, or mortgage, is not destroyed by the institution of an action to foreclose it.

The dissentient expressions herein rather enfeeble the decision in *Tocci v. Nowfall, ante,* 550, and give added significance to the prophecy contained in the dissent in that case.

DEVIN, J., dissenting: The only question raised by this appeal is the application of the *lis pendens* statutes (C. S., 500-504). The pertinent provisions of these statutes are as follows:

"In action affecting the title to real property, the plaintiff, at or any time after the time of filing the complaint, . . . may file with the clerk of each County in which the property is situated a notice of the pending of the action, containing the names of the parties, the object of the action, and the description of the property in that County affected thereby" (C. S., 500). "Any party to an action desiring to claim the benefit of a notice of *lis pendens,* whether given formally under this article or in the pleadings filed in the case, shall cause such notice to be cross-indexed by the clerk of the superior court in a docket to be kept by him to be called Record of Lis Pendens, which index shall contain the names of the parties of the action, where such notice (whether formal or in the pleadings) is filed, the object of the action, the date of indexing, and sufficient description of the land to be affected to enable any person to locate said land" (C. S., 501).

"From the cross-indexing of the notice of *lis pendens* only is the pendency of the action notice to a purchaser or incumbrancer of the property affected thereby; and every person whose conveyance or incumbrance is subsequently executed or subsequently registered is a subsequent purchaser or incumbrancer, and is bound by all proceedings taken after the cross-indexing of the notice to the same extent as if he were made party to the action. For the purpose of this section an action is pending from the time of cross-indexing the notice" (C. S., 502).

The provision as to cross-indexing of notice of *lis pendens,* originally applicable to Buncombe County only, was made State-wide by ch. 31, Public Laws 1919. These statutes are clear and explicit and do not admit of construction contrary to the manifest legislative intent.

It is admitted that at the time of the conveyance to the defendants Irvin in 1939 they had no knowledge whatever of the pendency of the action, or actual knowledge of the deed of trust under which the land is now sought to be sold.

In the majority opinion the decision is made to turn upon the fact that the deed of trust executed in 1927 by Knox and wife was duly recorded, and that by virtue of the registration statutes constructive notice was thereby given to subsequent purchasers. Unquestionably the defendants Irvin, who purchased the land in 1939, and who hold the title of the mortgagors, took with constructive notice of the deed of trust. Though they did not know it, the law fixed them with notice that a deed of trust had been given on this land in 1927. But what notice did they have that a suit to sell the land under this deed of trust had been instituted? The fact that defendants had available means of ascertaining that a twelve-year-old deed of trust remained uncanceled on the record should not be construed as notice that a suit had been instituted thereunder to sell the land upon allegations of failure to pay the debt secured.

A search of the records in the office of the register of deeds would not have revealed the pendency of a suit involving the title to the land. A search of the records in the clerk's office would have been equally futile, since the pendency of the action did not appear cross-indexed on the *lis pendens* docket in that office. A searcher of titles is now no longer required to examine the multitudinous files of civil actions to determine whether an action affecting the title of the land has been instituted. The statute was intended to facilitate the examination of titles and to afford a convenient means of giving notice of suit, and to guard against the consequences of transfers of title pending the action. In this case the plaintiff, apparently, realized the effect of its failure to file notice of *lis pendens,* for after it learned of the deed to defendants Irvin, it had them made parties to the action. But as to them the statute of limitations had run. While it would be unfortunate for the plaintiff to hold this action barred, it must be remembered that defendants are innocent purchasers for value without notice of the suit. Presumably, if the statute had been observed by the plaintiff, the defendants would not have purchased, and this controversy would not have arisen. The defendants Irvin do not contest the validity of the deed of trust from Knox to the plaintiff. They do not deny constructive notice of its existence. They base their defense on the admitted fact that in good faith they bought the land for full value and without notice of the suit to foreclose. They contend that in the absence of notice of *lis pendens* they were entitled to a day in court when served with summons, and that they had a right when given notice and made parties in 1940 to interpose any defense at that time available. I do not think the fact of registration of the deed of trust in 1927 should render inapplicable the plain provisions of the statute that, in actions affecting the title to real property, from the cross-indexing of the notice of *lis pendens* only is the pendency of the action notice to purchasers of the property. No notice of the suit appearing on the *lis pendens* docket in the clerk's office and defendants having no other notice, actual or constructive, that a suit had been instituted, as to them there was no suit, and hence when made parties by summons served in 1940 they had the right to set up the defense of the statute of limitations. This is in accord with the explicit language of the North Carolina statutes which, in my opinion, are controlling upon the facts of this case.

I cannot agree that the *lis pendens* statutes do not cover an action to foreclose a deed of trust on land. A suit for foreclosure is an "action affecting the title to real property." Its purpose is to sell the land, to transfer the title, to take the title out of one party and put it in another. The prayer for relief is that the land be sold and the title conveyed to the purchaser. 34 Am. Jur., 382; 38 C. J., 33; *Horney v. Price,* 189 N. C., 820, 128 S. E., 321.

The only authority cited in support of the opinion on this point is *Pierce v. Mallard,* 197 N. C., 679, 150 S. E., 342. In that case it was held that proceedings in attachment were not required to be docketed on the record of *lis pendens.* But this decision was based expressly on the ground that the statutes refer to an action affecting the title to real property. The Court said: "A warrant of attachment is not an action 'affecting the title to real property.' The warrant of attachment is not an action, but is ancillary and auxiliary to the action. . . . As said, the warrant of attachment is not an action affecting the title to the real property. The title of the owner of the land is not brought into dispute. The attachment merely seizes the property and holds it *in custodia legis* until the final determination of the action or until the property is released pending the action, when seized without proper cause. All the notice anyone is entitled to in cases where warrants of attachment are issued, is such as is contained in C. S., 807, *supra.*"

It seems to me clear that the words "action affecting the title to real property," *ex vi termini,* by force of the unambiguous language employed, necessarily include an action to sell land under the power contained in a deed of trust. To exclude foreclosure suits from the coverage of the statutes would seem to restrict their provisions contrary to the intention of the lawmaking power.

It may be noted that the statute originally contained specific reference to actions to foreclose mortgages (Rev., 460), and required that notice of *lis pendens* in those cases be filed twenty days before judgment. This limitation was stricken out by ch. 106, Public Laws 1917, and foreclosure suits placed on the same footing as other actions affecting the title to real property.

*Jones v. Williams,* 155 N. C., 179, 71 S. E., 222, cited in the opinion, was decided in 1911, before the enactment of the *lis pendens* statute now in force. At that time the filing of the complaint describing the land, the title to which was to be affected by the suit, was regarded as sufficient notice of the pendency of the suit. Since then the unequivocal language of the statute has declared, "From the cross-indexing of the notice of *lis pendens only* is the pendency of the action notice to a purchaser or incumbrancer of the property affected thereby."

While a purchaser cannot acquire a greater interest than his grantor possesses, in many instances sanctioned by the law a purchaser in good faith for value and without notice has a different standing from that of his grantor, and is freed from restrictions and limitations otherwise applying, and may avail himself of defenses not open to his grantor. C. S., 1009; *Bank v. Mackorell,* 195 N. C., 741, 143 S. E., 518; *Spence v. Pottery Co.,* 185 N. C., 218, 117 S. E., 13; *Cox v. Wall,* 132 N. C., 730, 44 S. E., 635. Nor do I agree that harmful consequences might

flow from the application of a plainly worded statute, the observance of which is both convenient and simple. Tax foreclosures and mechanics' liens are not affected. In the one case, notice is presumed, and in the other the lien is recorded in the clerk's office. 34 Am. Jur., 383.

I think there was error in the ruling of the court below.

SEAWELL, J., dissenting: If the subject dealt with in this decision were not so important I would content myself with a simple dissent, without discussion, but I think that it operates to destroy the force and effect of a progressive and salutary law, upon which those who have the duty of investigating and abstracting titles, and the profession generally, have been accustomed to rely, and who are now turned back to the uncertainty and difficulties of a blind search.

Succinctly stated, the holding is that statutes requiring notice of *lis pendens* to be filed and properly cross-indexed in a *lis pendens* docket do not apply to a suit to foreclose a mortgage.

The principal reasons assigned may be summarized: that a foreclosure suit is not an "action affecting the title to land"; that the registration of the instrument is sufficient notice of the pendency of an action to foreclose it; that because of the notice by registration of the mortgage or other instrument, the statute must be construed as applying only to actions brought to enforce equities in land incapable of registration, such as parol trusts, cancellation or correction of instruments for fraud or mistake, and the like; and that the suit brings the property *in custodia legis.*

As will be observed, these reasons do not rest upon any ground peculiar to our statute, but are necessarily predicated of all similar statutes wherever found. Similar statutes in a great number of the United States are practically identical in verbiage with our own, but none of the theories above suggested has been accepted by these courts or by the text writers on the subject. We stand alone.

Since, under C. S., 502, an action shall not be deemed to have been begun against any person not a party to the suit until the notice of *lis pendens* required by the statute has been cross-indexed, it becomes, as I insist, a simple question whether a foreclosure suit is an action affecting the title to property. This, it seems to me, is hardly arguable. At any rate, it has been uniformly so considered. See cases cited below. If so, I think it should be recognized that the Legislature in the exercise of a legitimate power has substituted this mode of notice for all others which might be suggested as theretofore efficient and has applied it to the class of cases we are now considering.

The situation is simply this. When these defendants were brought into the case, the mortgage sued upon by plaintiff had become subject

to the bar of the statute of limitations, which they then pleaded. *Stancill v. Spain,* 133 N. C., 76, 45 S. E., 466. This brings up the question dealt with in the main opinion: What did they get by their *mesne* title from the mortgagor?

Our law requiring the registration of mortgages dates back to the Act of 1829; it is now section 3311 of the Consolidated Statutes. Its purpose was to prevent frauds and to apprise purchasers and creditors of the *existence and nature of the encumbrance.* *Starke v. Etheridge,* 71 N. C., 240, 244. It has never before been suggested that it had any other purpose. It is, of itself, however, notice of the existence of the lien effective only as long as the lien is alive. *Cowen v. Withrow,* 112 N. C., 736, 740, 17 S. E., 575, 576; *Collins v. Davis,* 132 N. C., 106, 43 S. E., 579; *Bank v. Sauls,* 183 N. C., 165, 170, 110 S. E., 865, 867.

But the purchaser, either from the mortgagor directly or by *mesne* conveyances ensuing upon a sale under a valid second mortgage, as we find here, acquires more than the bare right to pay off the debt and remove the encumbrances—he gets the equitable title of the mortgagor, which, upon the termination of the trust created by the senior mortgage other than by foreclosure, becomes the legal title. The term, "equity of redemption," as now used, refers to such equitable estate. "A mortgage or deed of trust in the nature of a mortgage is intended as security for the payment of money, or for the performance of some collateral act, and becomes void upon such payment or performance. A 'mortgage' does not invest the mortgagee with an absolute and indefeasible title. The equitable title, called the 'equity of redemption,' remains in the mortgagor. . . . There is no difference in legal effect between a mortgage with a power of sale and a deed of trust executed to secure a debt. . . . Both are securities for a debt. Both create specific liens on the property; and in both the equitable title or right of redemption remains in the debtor, and is an estate or interest in the property that the debtor may sell, or that may be seized or sold under judicial process. . . ." Words and Phrases, Perm. Ed., Vol. 15, p. 80; *Brecht v. Law Union & Crown Ins. Co.,* 153 F. 452, 455; *Ladd v. Johnson,* 32 Ore., 195, 200, 49 Pac., 756; *Hawkins v. Stiles,* 158 S. W., 1011, 1024 (Tex. Civ. App.); *Walker v. King,* 44 Vt., 601, 612; *Grant v. Cumberland Valley Cement Co.,* 58 W. Va., 162, 52 S. E., 36.

Those jurisdictions which regard mortgages and deeds of trust as mere liens on the land to secure debts, where that is their purpose, without undue regard to the niceties anciently prevailing when forfeiture rendered absolute the legal title conveyed in the trust, prefer to regard the legal estate as still subsisting in the mortgagor, subject to the lien. *Seals v. Chadwick* (Del.), 2 Pennewill, 381, 45 Atl., 718; *Messer v. American Eagle Fire Ins. Co.,* 227 Ky., 3, 12 S. W. (2d), 358; *Logan County v.*

*McKinley-Lanning Loan & Trust Co.*, 70 Neb., 406, 101 N. W., 991; *Higgs v. McDuffie*, 81 Ore., 256, 158 Pac., 953; *Navassa Guano Co. v. Richardson*, 266 S. C., 401, 2 S. E. (2d), 307.

That the term, "equity of redemption," as referring to the equitable title of the mortgagor, is so regarded in our State there can be no doubt. *Hemphill v. Ross*, 66 N. C., 477; *Fraser v. Bean*, 96 N. C., 327, 2 S. E., 159; *Stevens v. Turlington*, 186 N. C., 191, 119 S. E., 210; *Layton v. Byrd*, 198 N. C., 466, 152 S. E., 161.

The conveyance of the encumbered lands by the mortgagor, or trustor, or title obtained through *mesne* conveyances, confers upon the assignee all the rights, with respect to the lands conveyed, which the original mortgagor had, including the right to make legal or equitable defenses against foreclosure which would be available to the mortgagor. He has, therefore, the right to rely upon the statute of limitations against such mortgage in the same way and to the same extent as the original mortgagor. *Stancill v. Spain*, 133 N. C., 76, 45 S. E., 466. If available, it will have the effect of destroying the lien and terminating the trust, in which case his equitable title will draw to it the legal title, as it would have done had he been the original mortgagor.

Nothing else appearing, the statute was available here because as to the Irvins, appellants, action was not brought until they were made parties to the suit, which was admittedly more than ten years after the last payment on the mortgage. The plaintiff is therefore relegated to such other protection as it may have against the claim of innocent purchase without notice.

There is none in contemplation of the present situation, except the institution of a foreclosure action in apt time against those who are at the time concerned with the title or lien, and the filing of a notice of *lis pendens* as to all others who may become purchasers *pendente lite*.

There can be no question as to the fact that statutory *lis pendens* substitutes its provisions for the common law wherever it applies. *Badger v. Daniel*, 77 N. C., 251; *Todd v. Outlaw*, 79 N. C., 240; *Collingwood v. Brown*, 106 N. C., 362, 368, 10 S. E., 868, 870. Such a statute—now C. S., 500—has been on our books for a sufficient length of time to be often reviewed by the courts, and its effect on the common law doctrine fully explained. This statute, as it stood before the 1919 amendment, requires the filing of a notice of *lis pendens* and provides that, "In action affecting the title to real property, the plaintiff, at or any time after a warrant of attachment is issued, or a defendant when he sets up an affirmative cause of action in his answer and demands substantive relief, at or any time after the time of filing his answer, if it is intended to affect real estate, may file with the clerk of each county in which the property is situated a notice of the pendency of the action, containing

the names of the parties, the object of the action, and the description of the property in that county affected thereby."

Thereafter the pendency of an action was no longer sufficient to bind the purchaser of lands in controversy where they lay in another county (because of the want of *notice* of *lis pendens* in that county). However, even under this statute an action pending in the county where the land lies, in which appear the names of the parties to the suit, the object of the action, and a description of the property to be affected was notice of *lis pendens* in that county, only because such a suit, with its pertinent disclosures, was a sufficient compliance with the *lis pendens* statute, and no further notice of *lis pendens* was required. *Badger v. Daniel, supra; Todd v. Outlaw, supra; Culbreth v. Hall,* 159 N. C., 588, 75 S. E., 1096; *Lamm v. Lamm,* 163 N. C., 71, 79 S. E., 290; *Dalrymple v. Cole,* 170 N. C., 102, 86 S. E., 988; *ibid.,* 181 N. C., 285, 107 S. E., 4; *Collingwood v. Brown, supra.*

C. S., 501 (sec. 464 of the Revisal, as amended by ch. 31, Public Laws of 1919; see Michie's Code, 1939), provides as follows:

"Any party to an action desiring to claim the benefit of a notice of *lis pendens,* whether given formally under this article or in the pleadings filed in the case, shall cause such notice to be cross-indexed by the clerk of the superior court in a docket to be kept by him, to be called Record of Lis Pendens, which index shall contain the names of the parties to the action, where such notice (whether formal or in the pleadings) is filed, the object of the action, the date of indexing, and sufficient description of the land to be affected to enable any person to locate said lands. The clerk shall be entitled to a fee of twenty-five cents for indexing said notice, to be paid as are other costs in the pending action."

C. S., 502 (sec. 462 of the Revisal, as amended by the compilers of the Consolidated Statutes), provides:

"From the cross-indexing of the notice of *lis pendens* only is the pendency of the action constructive notice to a purchaser or incumbrancer of the property affected thereby; and every person whose conveyance or incumbrance is subsequently executed or subsequently registered is a subsequent purchaser or incumbrancer, and is bound by all proceedings taken after the cross-indexing of the notice to the same extent as if he were made a party to the action. For the purposes of this section an action is pending from the time of cross-indexing the notice."

It will be noted that the radical changes effected in the law are those requiring cross-indexing of a notice of *lis pendens* and making such notice effectual only from the date of the filing and further providing that as to any party, and for the purposes of the section, "an action is pending from the time of cross-indexing the notice."

Since these changes were made in the law, several cases touching the subject have been reported, but the factual situation in all of them escaped the statute—in *Brinson v. Lacy,* 195 N. C., 394, 142 S. E., 317, and *Dalrymple v. Cole, supra,* because the transfer of title took place before this change in the law; in *Threlkeld v. Malcragson Land Co.,* 198 N. C., 186, 151 S. E., 99, because action was upon a note, not the mortgage securing it, and therefore did not affect the title to land; and in *Pierce v. Mallard,* 197 N. C., 679, 150 S. E., 342, because the action involved attachment and the land was taken *in custodia legis* and was subject, upon recovery by plaintiff, to a lien superior to that of other judgments taken after the effective date of the attachment. Perhaps the real basis of decision in that case, from our present viewpoint, should be that the judgment docket upon which the attachment is noted (see C. S., 807) is required to be cross-indexed (C. S., 613, 952 [4]).

In the case at bar the point is squarely presented. It is my opinion that the pending action itself did not constitute notice of *lis pendens* at the time of the purchase by appellants because the plain wording of the statute—C. S., 501, 502—requires cross-indexing of the notice to give it that effect and neither the summons docket of the Superior Court nor the civil issue docket, to which cases are transferred after the pleadings have been filed and the issues joined, is required to be cross-indexed, and in practice they are not so indexed. C. S., 952 (3).

There is no question that the requirement of notice of *lis pendens* applies to foreclosure suits. Ordinarily, the pendency of a suit to foreclose a mortgage on lands is sufficient notice of *lis pendens* to affect purchasers *pendente lite* with notice and bind them by the judgment in the case. But this is only true where statutes requiring notice of *lis pendens* regarding interest in lands have not been enacted. Where such statutes exist, as they do in our State, such a foreclosure suit comes within its provisions as would a suit asserting any other interest in the lands. Jones, Mortgages, Vol. 3, 8th Ed., p. 1799; *McKinney v. Sutphin,* 196 N. C., 318, 145 S. E., 621. "Applications of the doctrine accordingly occur in connection with actions of ejectment as well as in connection with equitable proceedings, such as suits to foreclose a mortgage or enforce any other lien." Tiffany, Real Property, 3rd Ed., sec. 1295.

I think this branch of the subject is sufficiently dealt with in the terse statement made in Wiltsie on Mortgage Foreclosure, 5th Ed., Vol. 1, sec. 464, directed pointedly to foreclosure suits: "Where a notice of *lis pendens* is required by statute its object is to give constructive notice of the pendency of the suit to all parties dealing with the defendant in regard to the land, the title to or possession of which is to be affected by the suit, and to bind them by the judgment in the same manner as though they had originally been made parties to the action. Where a

notice is not filed as required by the statute, the judgment of foreclosure and the sales thereunder are not operative as against persons who, without notice and pending the suit, succeed to the title or interest in the property of a party to the action." To the same effect is Jones, Mortgages, *loc. cit., supra; Jones v. Williams,* 155 N. C., 179, 71 S. E., 222; *Threlkeld v. Malcragson Land Co.,* 198 N. C., 186, 190, 151 S. E., 99, 101; *Broom v. Armstrong,* 137 U. S., 266, 34 L. Ed., 428; 34 Am. Jur., 377.

*Jones v. Williams, supra,* follows the *lis pendens* statute as it then existed and as it modified the common law, although the action was for mortgage foreclosure. It proceeded on authority of the cited cases, including *Collingwood v. Brown, supra,* and the rationale of decision was the same as in the cases cited in its support—that the pleadings themselves were a compliance with the statute. It is clear from the reservation thus made that the pendency of the suit was not good as it had been at common law, in a county other than that in which the proceeding was brought, notwithstanding that registration had been made in that county.

The theory that *Jones v. Williams, supra,* intended to withdraw such cases from the operation of the *lis pendens* statute falls to pieces when we observe that the statute then being considered expressly and *eo nomine* recognized mortgage foreclosure suits as being within the category of actions affecting the title to land. Rev., sec. 460. The statute was subsequently changed only with regard to the additional data required when the subject of the action was mortgage foreclosure.

I cannot accept the suggestion that the statutes of *lis pendens* apply only to equities in real estate incapable of registration, such as parol trusts, correction of instruments because of fraud or mistake, and the like, or that the registration acts are sufficient to give notice of a pending suit. The main opinion, in support of this proposition, quotes certain statements from Bennett on Lis Pendens, but, I think inadvertently, misses the paragraph that explains them. At most, these quotations only go to the effect of the common law doctrine of *lis pendens* upon registration laws and the fact that it does not affect them. For instance, if the law requires an instrument to be registered, the filing of *lis pendens* will not take its place. The one is a rule established by the court to make the judgment effective; the other is positive law. But I do not gather anywhere from this work that registration has any effect as a substitution for *lis pendens.* On the contrary, and here is the paragraph to which I have referred.

"Where the property involved is contained in an unregistered mortgage, which by the statutes of the State is required to be registered before becoming effective as against *bona fide* purchasers and creditors,

the filing of the bill to establish such unregistered mortgage will not constitute constructive notice *lis pendens* to such subsequent purchaser or creditor. In such cases the courts give force to the registry laws and hold the superior equity in the *pendente lite* purchaser or creditor, because the law has appointed a place where mortgages must be registered in order to be notice to purchasers, and if there be no registry there the purchaser is not held to constructive notice [of the mortgage] by any other means."

There is a further expression in the main opinion somewhat as follows: "The effect of *lis pendens* and the effect of registration are in their nature the same thing. They are only different examples of instances of the operation of the rule of constructive notice. One is simply a record in one place and the other is a record in another place. . . . They are each record notices." This is taken verbatim from *Jones v. McNarrin,* 68 Me., 334, 339. In that case the opinion adds: "A purchaser must consult both places of record for light and information." It is interesting to note that in that case the suit was to enforce a recorded lien and the case in effect holds that registration will not take the place of a notice of *lis pendens.* The registration was referred to only because of the fact that an ambiguous description existed both upon the record and in the pending suit.

We must concede to the Legislature the purpose, as we certainly must the right, to prescribe the mode in which notice of *lis pendens* may be given in actions "affecting the title to real property," in the enactment of these statutes, C. S., 500, 501, 502, which have, step by step, entirely relieved the harshness of the common law rule by providing a convenient place where the notice may be found, thus substituting certainty for the admitted confusion and harshness of the common law.

The contention that the notice required by the statute of *lis pendens* is not necessary in foreclosure suits is altogether inconsistent with the decisions of this Court. Wherever these decisions have dealt with foreclosure suits they have recognized the necessity of the notice required by the *lis pendens* statute, and that the statute is substituted for the common law rule. *Todd v. Outlaw, supra; Dancy v. Duncan,* 96 N. C., 111, 1 S. E., 455; *Jones v. Williams, supra.* This distinction is noted and upheld in *Collingwood v. Brown, supra,* in which *Justice Shepherd,* speaking for the Court, and commenting on *Todd v. Outlaw, supra,* and defining the effect of the *lis pendens* statute (and incidentally the function of registration) holds that the statute is paramount:

"We are of the opinion, however, that, as to real property there is but one rule of *lis pendens* in North Carolina, and that the provisions of The Code (sec. 229) (now C. S., 500) are a substitute for the common-law rule. When the Court held, in the cases cited, that it was not necessary to file a

formal notice of *lis pendens* when the action was pending in the county in which the land was situated, we do not understand that it intimated that two rules of *lis pendens,* varying in their extent and operation, prevailed in this State.

"As *Bynum, J.,* in *Todd v. Outlaw, supra,* very justly remarks: 'It would seem that the purpose of our statute was to assimilate the law of *lis pendens* to the registration laws and the docketing of judgments, and to produce consistency and certainty in the doctrine of constructive notice.' This consistency can be secured by holding, as we do, that where the action is brought in the county where the land is situated, and the pleadings contain 'the names of the parties, the object of the action, and the description of the property to be affected in that county,' that this is a substantial compliance with The Code, sec. 229, as to the filing of notice, and puts in operation all of the provisions of the statute. . . .

"Again, it is hardly probable, in view of the legislation in England and many of the United States, dictated by the demands of public convenience and necessity and commerce, that this important statute was only to apply in those rare instances where suits affecting real property were brought in counties in which the land was not situated.

"The rule of *lis pendens* is often regarded as harsh in its operations, but it is universally admitted to be based upon public policy imperatively demanded by a necessity which can be met and overcome in no other manner. Freeman on Judgments, 191. Where, however, its rigors may be softened, and at the same time its advantages preserved, it is the duty of the Legislature to act, as it has done in this State, for the protection of purchasers and subsequent incumbrances."

Since *Todd v. Outlaw, supra; Dancy v. Duncan, supra;* and *Jones v. Williams, supra,* regarded actions affecting the title to real estate, including foreclosure suits, as completely subject to the law requiring statutory notice of *lis pendens* as the law then stood, it seems to me that the conclusion is inescapable that when the statute was amended by C. S., 501 and 502, requiring the cross-indexing of the notice of *lis pendens* in a separate *lis pendens* docket, compliance with that statute is still necessary to bind a *bona fide* purchaser *pendente lite.* Formerly the pleadings disclosed the threefold requirements of the statute as notice—a statement of the names of the parties, a description of the land, and the purpose of the action—and only by virtue of these facts did it serve as notice. The additional requirement is that such notice shall be cross-indexed in a separate *lis pendens* docket and the consequence annexed in the statute is plainly that if this is not done the *bona fide* purchaser will not be bound by the judgment.

The mere fact that property is in litigation through a foreclosure suit or in any other way does not take it *in custodia legis;* nor does either the

common law or statutory doctrine of *lis pendens* so regard it. The term is of·technical significance, applicable only where in some appropriate proceeding the property in question has been seized or taken by the court, as in attachment, levy under execution, receivership, and the like. It has no application to the principle of *lis pendens.* Wiltsie, *op. cit., supra,* p. 754, sec. 449.

I may say that there is no principle better established than that under the common law *lis pendens* operated altogether *ex proprio vigore* and without external aid. It was an arbitrary rule established by the courts as a mere device to keep the subject of the action *in statu quo* until final judgment. While the weight of authority is decidedly to the effect that no theory of notice is involved in the doctrine of *lis pendens* at the common law, if the doctrine was ever based upon any theory of notice, such notice was never supposed to have been given from any source other than the mere pendency of the action and because of an antiquated and outmoded assumption that "all the inhabitants of the realm are supposed to pay attention to and be familiar with what is going on in courts of justice." *Fox v. Reeder,* 28 Oh. St., 181; 34 Am. Jur., 363, sec. 3 and notes. Speaking of the notice of *lis pendens* afforded from the pendency of the action, Thompson, Real Property (1940), sec. 4508 (4237), says: "The cases generally hold that the rule of *lis pendens* is a harsh and oppressive one when given operation against a *bona fide* purchaser without notice. One relying on the rule must understand that his claim is *strictissimi juris."* The statutory *lis pendens,* together with the 1919 amendment to the law is calculated to relieve this harshness and to give the intending purchaser a more reasonable notice, since it does not require him to explore the jungle of litigation in the clerk's office without the guidance afforded by a proper index. But whatever the reason, it is our business to interpret, not to write the law.

Action was commenced against the Irvins, appellants, only when they were made parties to the suit. C. S., 404, 475; *Hatch v. R. ·R.,* 183 N. C., 617, 112 S. E., 529; *Jones v. Vanstory,* 200 N. C., 582, 157 S. E., 867. By that time the statute of limitations had run against the mortgage, and it was adequately pleaded. Since the pendency of the suit falls short of compliance with the statute in the essential of cross-indexing, and was therefore not constructive notice, and since appellants had no actual notice of the pendency of the suit and were *bona fide* purchasers, the bar of the statute was not repelled. In law they are innocent purchasers without notice.

These laws requiring notice of *lis pendens* and requiring these notices to be properly cross-indexed in a *lis pendens* docket are remedial in their nature. Even if it be conceded—and I do not concede it—that the registration of an instrument had the prophetic power to point out the

existence of a lawsuit not yet begun, it was still within the power of the Legislature to provide a more reasonable notice more appropriate to the progress and to the crowded business transactions and multiplied litigation of the modern age, and their attempt to do so should be sustained by the court in the spirit accorded the beginning of such a reform as expressed in *Todd v. Outlaw, supra.* The act as heretofore understood took an intolerable burden from those whose duty it is to investigate and abstract titles and who have become familiar with the aid given by the *lis pendens* docket and I doubt if they will welcome a return to the old condition.

But if the Legislature should see fit again to deal with a frustrated statute, I do not know what clearer language it might use to express its purpose.

There was no reason why the plaintiff in this action should not have observed the simple requirements of the statute, and I think the judgment should be reversed.